COFFEY, Circuit Judge,
concurring and dissenting.
Although I concur in the majority’s holding that the district court erred in setting-off the debts of the Boston & Maine (“B&M”) and the Rock Island Railroad (“Rock Island”), I write separately because our decision effectively overrules Chicago, Rock Island and Pacific Railroad Co., v. Atchison, Topeka & Santa Fe Railway Co., 537 F.2d 906 (7th Cir.1976) (“Rock Island I’’). I agree that Rock Island I should be overruled, but believe that we should overrule this case forthrightly, rather than ignoring it. Furthermore, I disagree with the majority’s holding that equity compels us to deny relief to Rock Island. A review of the history of the Rock Island bankruptcy reveals that our decision in *568 Rock Island I required the Rock Island to expend money that should have been preserved for operating expenses. In my analysis, equity compels us to remand this case to the reorganization court so it might have an opportunity to draft some relief for the Rock Island to correct the damage inflicted by our earlier erroneous decision.
I.
As the majority correctly notes, this litigation arose out of a disagreement over the payment of per diem interline balances. Specifically, the issue between the railroads was whether a bankruptcy trustee was required to pay the debtor railroad’s pre-bankruptcy per diem accounts when presented for payment. In Rock Island I, our court recognized the special status of railroad reorganizations under § 77 of the Bankruptcy Act (now codified at 11 U.S.C. § 101(33), 1163, 1166, 1168-1173):
“Section 77 proceedings contemplate the continued operation of the bankrupt railroad by the trustee pending adoption by the Interstate Commerce Commission of a reorganization plan generally acceptable to shareholders, creditors and the court. Railroad operations during the reorganization period remain subject both to the supervision of the reorganization court and to the jurisdiction of the Commission.”
537 F.2d at 907. As our court analyzed the issue, payment of pre-bankruptcy per diem accounts presented a conflict between the goals of the Interstate Commerce Commission (“ICC”) and the general principles of bankruptcy. Id. at 909-10. The ICC argued that under 11 U.S.C. § 205(c)(2), a reorganization court is without authority to exempt a railroad in reorganization from compliance with ICC orders, which required payment of per diem accounts as they became due. The Commission contended that its rule requiring immediate payment of per diem charges must be honored because, “deferred payment of per diem accounts will undermine a finely balanced regulatory scheme, force other railroads (some of which are themselves financially troubled) to subsidize the Rock Island’s operations, and exacerbate an already severe national rail car shortage.” Id. at 910. The bankruptcy trustee, on the other hand, argued that payment of the interline balances was governed by bankruptcy law and should not be paid when presented because, “immediate payment of pre-reorganization per diem accounts will severely burden the Rock Island’s already distressed financial condition and unfairly benefit the interline railroads at the expense of the Rock Is-landés other creditors.” Id. Our court held that the goals of the ICC, rather than the goals of bankruptcy, should prevail.
“[I]n view of the comprehensive regulation by the Commission of all aspects of car service and the key role which it rules for settlement of per diem accounts play in that regulatory system, the payment of per diem accounts for both post- and pre-reorganization periods is properly considered as part of the operation of the railroad in reorganization under Section 77(c)(2) and is consequently covered by Commission orders.”

Id.

Following our Rock Island I decision, Congress enacted a new bankruptcy code. Bankruptcy Reform Act of 1978, PL. No. 95-598, U.S.Code Cong. & Admin.News 1978, 5787. Under the new Act, payments for both pre- and post-reorganization per diem charges must be approved by the reorganization court. 11 U.S.C. § 1166. The Senate version of what is now § 1166 codified our holding in Rock Island I.
“Subsection (1) further provides that the debtor must pay in cash all amounts owed other carriers for current balances owed for interline freight, passenger and per diem, including incentive per diem, for periods both prior and subsequent to the filing of the petition, without the necessity of court approval.”
S. 2266 § 1169, 95th Cong. 1st Sess.; see S.Rep. No. 989, 95th Cong., 1st Sess. 134 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5920. This proposed codification of Rock Island I was rejected by Congress, “as violative of the principle of *569 equal treatment of all creditors under Title 11.” Legislative Statement reprinted in 11 U.S.C.A. § 1166, Historical and Revision Notes (West, 1979). In other words, Congress rejected our holding that the rules of the ICC, rather than principles of bankruptcy, should govern the question of whether pre-reorganization per diem charges should be paid immediately.
Sometime later, the First Circuit issued an opinion in a case in which several railroads sought immediate payment of their per diem charges from the B&M. In the Matter of Boston & Maine Corp., 600 F.2d 307 (1979). The First Circuit rejected our Rock Island I holding because, inter alia, Congress had expressly rejected our view when enacting 11 U.S.C. § 1166. 600 F.2d at 313. The First Circuit affirmed the district court’s refusal to order immediate payment of pre-reorganization per diem charges owed by the Boston & Maine.
As a result of these two decisions, Rock Island v/as required to pay its reorganization per diem claims but did not receive payment from B&M for per diem charges owed to Rock Island before B&M’s bankruptcy. In September of 1979, the ICC declared the Rock Island “cashless” (that is, the Rock Island could not transport the traffic offered to it because its cash position made its continuing operation impossible. 49 U.S.C. § 11125(a)). Kansas City Term. Ry. Co.-Operate-Chicago, Rock Island & Pacific R.R. Co., 360 I.C.C. 289 (1979). At that time, the Rock Island trustee ceased paying interline claims.
On May 22,1984 Boston & Maine filed its petition for payment of these post-bankruptcy interline balances in the Rock Island reorganization court. In the reorganization court’s view, requiring the Rock Island to pay the B&M claim, even though Rock Island had not received payment from B&M for interline claims dating from before B&M’s reorganization, was unfair:
“Both parties have claims against the other for balances due on interline accounts which accrued while each was an operating railroad. The Rock Island’s claim amounts to $180,962.80; B&M’s claim totals $101,812.32. Under Rock Island’s plan of reorganization, B&M will receive full payment of its claim. Under B&M’s reorganization plan, however, CPC [Rock Island] will receive only ten cents on the dollar of this claim. This is the result urged by B&M in its petition. It contends that this court must order that its claims be paid in full and that the existence of the Rock Island claim against it has no effect on its entitlement to payment. It claims that CPC must seek payment of that claim in the B&M reorganization proceedings where it will receive ten cents on the dollar in accordance with B&M’s plan of reorganization. The inequity which would result if the court were to order the payment of B&M’s claims without regard to the existence of the Rock Island’s claim against B&M is manifest. B&M will receive payment in full for its claim while the Rock Island will be forced to accept payment of only a fraction of its claim. The court deems such a result fundamentally unfair.”
The majority reverses the district court and reasons that the debts were not “mutual” as that term was used in former 11 U.S.C. § 108(a), which governs this case. Specifically, the majority reaches out into space and holds that the debts were not “mutual” because one debt was a pre-bank-ruptcy debt while the other was a post-bankruptcy debt. However, the majority completely disregards, ignores and casts adrift our holdings in Rock Island I that the rules of the Interstate Commerce Commission mandated that no distinction be made between pre- and post-bankruptcy per diem interline accounts and that interline accounts are mutual open accounts. Moreover, an examination of the majority opinion reveals that its judgment is based on fundamental principles of bankruptcy— i.e., providing a fresh start and equal treatment of creditors — rather than the goals of the ICC. Indeed, the majority opinion is completely devoid of the analysis of the ICC’s goal of a finely balanced regulatory scheme that we found compelling in Rock *570 Island I. It is apparent from the majority’s blanket preference for bankruptcy goals over the goals of the ICC to maintain the status quo operation of both railroads and the absence of discussion of the effect of the decision on the goals of the ICC, that the balance between bankruptcy and the ICC no longer is struck in the ICC’s favor, insofar as interline accounts are concerned. Thus, because the majority opinion insists on ignoring and casting aside the holdings of Rock Island I and is guided by the principles of bankruptcy, rather than the goals of the ICC, I am left with the conviction that Rock Island I has been buried but has not received a proper funeral.
I believe that the more proper judicial practice is to overrule cases forthrightly, rather than sub silentio. Furthermore, it is apparent to me that a direct overruling of Rock Island I would provide the trial courts with a clearer view of the equities. The majority dismisses Rock Island’s claim of unfairness as though the railroad brought its troubles upon itself:
“The Rock Island forcefully argues that because it must pay the claims in full, the Boston & Maine must do so too, and the setoff is a step in that direction. The conflict between our decisión and the First Circuit’s does create an anomaly, but this does not cut entirely in the Rock Island’s favor. Our 1976 decision required the Rock Island to pay interline balances in full; it is only the Rock Island’s violation of that order that allowed it to become a debtor to the Boston & Maine to the tune of $100,000. Had the Rock Island paid as required, it would not now have the debt it seeks to setoff.”
Contrary to the majority’s view of a deadbeat railroad, Rock Island ceased making its interline payments only because it was without funds to make the payments. Kansas City, 360 I.C.C. at 319-20. I am troubled by the possibility that having to pay 100 percent of its pre-reorganization interline balances while receiving no payment in return from Boston & Maine for B&M’s pre-reorganization interline balances may have been a contributing factor in Rock Island’s becoming cashless. Thus I would remand to the reorganization court to allow it to fashion proper relief from the damage caused by our erroneous decision in Rock Island I.